UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Nos. 6:10-CR-17-KKC-HAI; |
| ) | 6:10-CR-55-KKC-HAI-2 |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| TINA PARTIN, ) | |
| ) | |
| Defendant. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from Chief Judge Caldwell, the Court considers reported violations of supervised release conditions by Defendant Tina Rayshell Partin. Defendant has been on supervised release related to two separate criminal cases. In case 6:10-CR-17, Defendant pleaded guilty to conspiracy to distribute oxycodone.[1] In case 6:10-CR-55-2, Defendant pleaded guilty to counterfeiting money.[2] She was sentenced in both cases in August 2011, and received a total term of 84 months of imprisonment (with the sentences running concurrently). D.E. 41. This sentence was a downward departure from her Guidelines Range of 100 to 125 months. *See* PSR ¶ 99. She was further sentenced to six years of supervised release in the drug case and three years of supervised release on the counterfeiting case. D.E. 41. In January 2015, her sentence was reduced from 84 months to 70 months by operation of a retroactive amendment to the Guidelines. D.E. 44.

Defendant was released from custody on March 28, 2017. In February 2018, Defendant's cases were reassigned from Judge Thapar to Chief Judge Caldwell. D.E. 46.

---

[1] *See* Docket Entries 37 (plea agreement) and 41 (judgment) of case number 6:10-CR-17.
[2] *See* Docket Entries 68 (plea agreement) and 70 (judgment) of case number 6:10-CR-55-2. For sake of simplicity, the remainder of the docket references will be to case 6:10-CR-17.

Also in February 2018, the United States Probation Office ("USPO") reported that Defendant had admitted using benzodiazepines. D.E. 48. A urine screen detected no other controlled substances. *Id*. The USPO requested that no action be taken at that time, and Chief Judge Caldwell agreed. *Id*.

**I.**

On April 3, 2018, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. According to the Report, the USPO discovered on March 30 that, for over a month, Defendant had not been living at the address that she supplied to the USPO. The probation officer left a card with Defendant's daughter directing Defendant to report to the office on April 2. Defendant did not report, and the officer was subsequently unable to contact Defendant through the phone number she supplied. The USPO then discovered that Defendant's state probation officer had not seen her since February 14, 2018, and an absconder warrant had been issued for her arrest.

Based on these facts, Violation #1 charges a violation of the condition that requires Defendant to give the USPO ten days' advanced notice of any change in residence or employment. This is a Grade C Violation.

Violation #2 charges a violation of the condition that requires Defendant to permit the probation officer to visit her at any time at home or elsewhere. Clearly, the officer could not visit her when her whereabouts were unknown. This is a Grade C violation.

Violation #3 charges a violation of the condition that requires Defendant to submit a written report within the first five days of each month. According to the Report, Defendant has not completed a monthly report since October 2017. This is a Grade C violation.

On April 27, the USPO issued an Addendum to the Report. According to the Addendum,

On April 17, 2018, the undersigned spoke to a deputy with the Bell County Sheriff's Office who indicated Tina Partin was arrested on April 6, 2018, at the residence of Jason Taylor. According to the deputy, a search incident to arrest revealed a small safe, contained in a larger safe. The small safe contained a digital lock and was opened with a numeric combination by Partin. Inside the small safe was a .25 caliber handgun, claimed by Jason Taylor, and a hand-written receipt to Tina Partin for a Polaris ATV Partin had purchased previously. In addition to the aforementioned items, several firearms, including a stolen firearm, bags of suspected marijuana, digital scales, and additional items of drug paraphernalia were located during a search of the home and an outbuilding.

Partin was arrested on an outstanding Kentucky Division of Probation and Parole warrant. Jason Taylor was arrested and charged with Trafficking in Controlled Substances, Possession of Drug Paraphernalia, and Receiving Stolen Property – Firearm, Bell County District Court case number 18-F-208.

Based on these facts, Violation #4 in the Addendum charges a violation of the condition that prohibits Defendant from possessing a firearm. Based on her constructive possession of the handgun in the safe, this is a Grade C violation.

Violation #5 in the Addendum charges a violation of the condition prohibiting the commission of another federal, state or local crime. According to the Addendum, Defendant was a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), a Class C felony. This is a Grade B violation.

Violation #6 charges a violation of the condition that prohibits Defendant from associating with any person engaged in criminal activity or any person convicted of a felony, absent permission to do so from the probation officer. Based on Defendant's association with Jason Taylor, who was charged with, among other things, trafficking in controlled substances, this is a Grade C violation.

The Court conducted an initial appearance pursuant to Rule 32.1 on May 1, 2018, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 54. The United States moved for interim detention; Defendant did not

argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on May 21, 2018, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 57. Defendant competently entered a knowing, voluntary, and intelligent stipulation to all six violations. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation as described in the Report and Addendum. The United States thus established all six violations under the standard of § 3583(e).

## II.

The Court has evaluated the entire record, including the Report, Addendum, and accompanying documents, and the sentencing materials from the underlying Judgments. Additionally, the Court has considered all of the § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. In the drug case, Defendant pleaded guilty to conspiracy to distribute pills containing oxycodone. This charge carried an offense enhancement on account of Defendant's prior drug felony, making the crime a Class B felony. *See* 21 U.S.C. §§ 841(a)(1), 846, 851. In the other case, Defendant pleaded guilty to passing or uttering counterfeit Federal Reserve notes, a Class C felony. The drug conspiracy conviction drives the penalty in this context. For a Class B felony, the maximum revocation sentence provided under § 3583 is three years of imprisonment. 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-*

*Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under § 7B1.1, Defendant's admitted conduct would qualify as a Grade B violation with respect to Violation #5, and Grade C as to the others. Given Defendant's criminal history category of IV (the category at the time of the conviction) and a Grade B violation,[3] Defendant's range, under the Revocation Table of Chapter 7, is 12 to 18 months.

A court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration actually imposed due to the violation. *See* 18 U.S.C. § 3583(b), (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Given the nature of Defendant's drug conspiracy conviction, pursuant to 21 U.S.C. § 841(b)(1)(A), there is no maximum term of supervised release that can be re-imposed. Again, the drug conviction drives the penalty in this case. The counterfeiting conviction would carry a maximum post-revocation supervised release term of three years, minus any term of imprisonment imposed upon revocation. 18 U.S.C. § 3583(e)(3).

### III.

At the final hearing, the parties argued for different penalties. The United States urged the Court to revoke and impose a sentence of 17 months' imprisonment, followed by reimposition of the six-year term of supervised release. The defense requested a 12-month term of imprisonment, and did not argue against six years of supervised release to follow.

The government stressed how Defendant's conduct was an egregious breach of the Court's trust—she has a history of not complying with supervised release conditions. The

---

[3] *See* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

5

government stressed that Defendant's underlying crimes of drug trafficking and counterfeiting occurred while she was on state supervision. Now, she had absconded from both federal and state supervision and was caught with Taylor, who was arrested for drug trafficking. On top of that, Defendant illegally possessed a firearm. Perhaps most damning, the USPO was unable to intervene because Defendant could not be located and she had stopped making monthly reports.

The government further noted that Defendant had violated her federal release before, by using benzodiazepine—a drug that did not appear in the substance abuse history in her PSR. The decision not to revoke her release at this time was not the only "grace" that was shown to her. Defendant also received a 16-month downward departure at her sentencing.

According to the government, the only mitigating factor was Defendant's stipulation to the violations. Defendant's history and the facts of the violation conduct counsel that she is a danger to the public. To quell this danger, the government recommended six years of supervision following release.

According to the defense, Defendant wants to improve and she has no objection to being on supervision. Accordingly, there was no argument against imposing six years of supervision. The defense downplayed the seriousness of the firearm-based violation by stressing that it was "constructive" possession—the gun was in a safe that Defendant knew how to open. She was not carrying it. Further, this set of violations contains no accusation of drug use. The February 2017 "slip up" with benzodiazepine was over a year ago. According to the defense, Defendant was remorseful for not reporting to the USPO. Accordingly, a sentence at the bottom of the Guidelines Range would be adequate to deter her behavior, and the ensuing supervised release would protect the public.

Defendant addressed the Court. She said she had finished the RDAP program while incarcerated, and that training was what had kept her from using drugs again. She said she took responsibility for her actions.

### IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range.

The nature and circumstances of Defendant's underlying conviction are quite serious. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). She participated in a drug distribution conspiracy while on state supervision and with a prior drug felony. The counterfeiting compounded the harm.

Concerning her history and characteristics, what stands out is her prior difficulty in complying with both state and federal supervision. The Court is glad that RDAP was helpful and that Defendant has not returned to drug use. But, as highlighted by her association with Taylor while he was trafficking drugs, she makes bad choices.

Looking to the violation conduct, the constructive firearm possession is a weighty aggravator. Were she to be indicted, she could face a ten-year maximum sentence just for having constructive possession of the gun. The gun is also indicative of danger. These facts indicate a pressing need to deter further criminal behavior and protect the public.

The sentencing factor that concerns education and treatment is not a large concern in this case. Defendant has already received the benefit of RDAP and reports that it has helped her stay clean.

The need to avoid unwarranted sentencing disparities among defendants with similar records who have committed similar violations is addressed by the recommendation of a sentence within Defendant's Guidelines Range.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into § 3583(e). Here, Defendant has shown a pattern of disregarding the conditions of supervision. Falling off the USPO's radar is unacceptable. And there are multiple violations in play.

Also weighing against a low-Guidelines sentence is the fact that Defendant received a 16-month downward departure at sentencing. The Guidelines suggest it is appropriate for the Court to take this time back upon revocation. *See* USSG § 7B1.4 cmt. 4.

A sentence of 17 months is within the Guidelines Range and, for the reasons stated above, the Court finds it is sufficient but not greater than necessary to meet the section 3553(a) factors incorporated into this analysis. *See* 18 U.S.C. § 3583(e). The Court will also recommend that Defendant, upon release, be subject to six years of supervision.[4] No new conditions are necessary.

---

[4] The counterfeiting conviction carries a maximum three-year term of supervision, reduced by any revocation term of imprisonment pursuant to 18 U.S.C. § 3583(h) and *United States v. Brown*, 639 F.3d 735, 737-38 (6th Cir. 2011). Factoring in the 17-month imprisonment term, this means that 19 months of supervision remain available, post-release, on the counterfeiting conviction. Accordingly, the remaining 55 months of the six-year supervised release term must be associated with the drug conspiracy conviction, which carries no maximum supervised release term.

## V.

Based on the foregoing, the Court **RECOMMENDS:**

(1) That Defendant be found guilty of all six violations.

(2) Revocation with a term of imprisonment of 17 months, followed by a 72-month term of supervised release.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As discussed at the final hearing, pursuant to Rule 59(b)(2), any party wishing to object **SHALL** do so by an appropriate filing in the record within **FIVE DAYS** after being served with a copy of this recommended decision. Any party may object to any or all portions of this recommendation for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Chief Judge Caldwell's docket upon submission. If Defendant chooses to waive allocution, she **SHALL** do so on or before the deadline for filing objections.

This the 23rd day of May, 2018.



Signed By:
*Hanly A. Ingram*
United States Magistrate Judge